# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| VINCENT L. ARGENTINO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 09-4217-CV-C-SOW |
| | ) |
| DAVE DORMIRE, et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER GRANTING SUMMARY JUDGMENT

This 42 U.S.C. § 1983 civil rights case was filed pro se by an inmate who is incarcerated at the Jefferson City Correctional Center (the "JCCC") in Jefferson City, Missouri. It is the third time this Court has considered the constitutionality of a Missouri Department of Corrections ("MDOC") policy banning inmates' online solicitation of pen-pals.[1] The defendants are the following: (1) JCCC Warden Dave Dormire; (2) Functional Unit Manager Charles Turner; (3) Caseworker Scott Kentner; and (4) MDOC Director George Lombardi. Plaintiff alleges that his First Amendment rights have been violated by the MDOC policy.

Now pending before the Court is defendants' joint motion for summary judgment and suggestions in support thereof. (Doc. No. 72). Defendants contend that plaintiff fails to state a claim and that they are entitled to summary judgment as a matter of law. Plaintiff has filed suggestions in opposition to defendants' motion (Doc. No. 74) and defendants have filed reply suggestions (Doc. No. 77).

---

[1] The Court first upheld the constitutionality of the policy in Bostic v. Moore, No. 08-3404-CV-S-RED-P (W.D. Mo. 2010), and reaffirmed its constitutionality in Lewis v. MDOC, No. 09-4167-CV-C-SOW (W.D. Mo. 2011). Even more recently, the Seventh Circuit upheld the constitutionality of a similar policy in Woods v. Comm'r of the Indiana Dept. of Corr., No. 10-3339, 2011 U.S. App. LEXIS 14732 (7th Cir. July 19, 2011).

## STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 56(c), a moving party is entitled to summary judgment on a claim only if he has made a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See generally William v. City of St. Louis, 783 F.2d 114, 115 (8th Cir. 1986). In applying this standard, the court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Tyler v. Harper, 744 F.2d 653, 655 (8th Cir. 1984), cert. denied, 470 U.S. 1057 (1985). "The inquiry performed is . . . [whether] . . . there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). A party opposing a motion for summary judgment, however, "may not rest upon the mere allegations . . . of [his pleadings], but . . . by affidavits . . . must set forth specific facts showing that there is a genuine issue for trial. If [he] does not so respond, summary judgment, if appropriate, shall be entered against [him]." Fed. R. Civ. P. 56(e).

## SUMMARY OF FACTS

According to the allegations made in plaintiff's verified amended complaint (which must be treated as an affidavit for summary judgment purposes),[2] plaintiff was "found guilty of violations of internet accessibility despite no access to the internet." He claims that an MDOC policy, which does not allow inmates to solicit pen-pals through postings on the Internet, violates his First Amendment

---

[2]The United States Court of Appeals for the Eighth Circuit has held that a pro se plaintiff's verified complaint is the equivalent of an affidavit for summary judgment purposes. Watson v. Jones, 980 F.2d 1165, 1166 (8th Circuit 1992).

rights. (Doc. No. 9, pg. 3).

In 2005, the state of Missouri faced a substantial problem of prisoners defrauding members of the general public. (See Affidavits of Lisa Jones and Tom Clements, Doc. Nos. 72-4 & 72-5). While still inside prison walls, prisoners could mail a letter to pen-pal solicitation companies and ask that their "profile" be posted to a company's website. A prisoner's profile contains his or her biographical information and picture. After the profile is posted, a member of the general public can correspond with a prisoner. On the surface, the purpose of such websites is for prisoners and members of the general public to pursue consensual relationships. However, instead of purely pursuing consensual relationships with members of the general public, some prisoners were fraudulently obtaining money from those outside prison walls. For example:

> the [Offender Fraud] Committee investigated another report of fraud in which an inmate received money from an online pen pal so that the inmate could travel to the pen pal's location upon release from the prison. When the inmate arrived at the pen pal's location the inmate asked the pen pal for additional money to pay parole expenses and upon receiving that money disappeared. It was later determined that the inmate was never on parole.

(Affidavit of Lisa Jones, Doc. No. 72-4, pg. 4). Other instances of fraud included one where an individual of the general public sent a prisoner $10,854.05 because he believed he was the prisoner's significant other; one where $4,500 was sent to a female prisoner who claimed she would marry the sender when she was released; and one where an offender received $30,000 from someone outside prison in return for a false promise that the prisoner would meet them when released. (Affidavit of Tom Clements, Doc. No. 72-5 pg. 2).

To combat this fraud, then-MDOC Director Larry Crawford formed an Offender Fraud Committee (the "Committee") on July 14, 2005. The Committee reviewed various complaints by citizens and possible solutions to the problem. It suggested a number of measures, including a full ban

on prisoners' use of pen-pal websites. (Doc. No. 72-4, pg. 7). The Committee also suggested that the MDOC require all outgoing correspondence have a stamp, which would inform recipients that the sender was a prisoner, and that the recipient could go to the MDOC website "to verify information about the inmate." (Doc. No. 72-4, pg. 6).

As changed per the Committee's recommendations, the MDOC policy states:

1. Offenders are not authorized to participate in, join or have their names posted on any websites with the sole purpose of pen pals.

2. Offenders are not prohibited from corresponding with pen pals, but shall not place ads soliciting pen pals.

3. Offenders are prohibited from correspondence or materials from persons or groups marketing advertising services or from subscribing to advertising services.

4. This does not apply to those websites proclaiming the offender's innocence, i.e. freexxx.com, etc.

5. Offender pen pal websites will be monitored to ensure offenders are not participating in offender websites.

6. Offenders who post ads or have ads posted . . . shall be subject to a conduct violation.

(MDOC Institutional Serv's Policy and Proc. Manual, Doc. No. 72-3, Pg. 12).

## DISCUSSION

This is not the first time this Court has confronted a First Amendment challenge to the MDOC pen-pal policy. After summarizing the facts in <u>Lewis v. MDOC</u>, No. 09-4167-CV-C-SOW (W.D. Mo. 2011)), this Court analyzed the constitutionality of the MDOC pen-pal policy as follows:

> Plaintiff alleges that the above policy violates his First Amendment rights. Defendants, on the other hand, offer a number of compelling justifications for why the policy is constitutionally sound. In addition, defendants note that another division of this Court already has upheld the pen-pal web site prohibition as constitutional. See <u>Bostic v. Moore</u>,

-4-

No. 08-3404-CV-S-RED-P (W.D. Mo. 2010).

**I.    First Amendment**

The parties agree that the First Amendment analysis in this case is governed by Turner v. Safley. 482 U.S. 78 (1987). Under Turner v. Safley, prison regulations which restrict an inmate's First Amendment rights are "permissible if they are reasonably related to legitimate penological interests . . . and are not an exaggerated response to such objectives." Beard v. Banks, 548 U.S. 521, 528 (2006) (the latest Supreme Court decision employing the Turner v. Safley standard) (upholding regulations restricting access to newspapers, magazines, and photographs as an incentive to correct behavior) (internal quotations and citations omitted); see also Dean v. Bowersox, 325 F. App'x 470, 472 (8th Cir. 2009). "Turner also sets forth four factors relevant in determining the reasonableness of the regulation at issue." Beard v. Banks, 548 U.S. at 529 (internal quotations and citation omitted).

> [1] Is there a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it?
> [2] Are there alternative means of exercising the right that remain open to prison inmates?
> [3] What impact will accomodation of the asserted constitutional right . . . have on guards and other inmates, and on the allocation of prison resources generally?
> [4] Are ready alternatives for furthering the governmental interest available?

Id. (internal quotations and citations omitted) (paragraph breaks and numbering added); see also Ortiz v. Fort Dodge Correctional Facility, 368 F.3d 1024, 1026 (8th Cir. 2004).

All four Turner factors weigh in favor of the defendants in this case, for the same reasons given in a previous order of this Court. See Bostic v. Moore, No. 08-3404-CV-S-RED-P (W.D. Mo. 2010) (granting summary judgment to defendants regarding the same MDOC prohibition on the use of pen-pal web sites).

First, defendants correctly point out that "there is a logical connection between preventing fraud," a legitimate government interest, "and prohibiting inmates access to the tool used to commit fraud." (Doc. No. 50, pg. 21). Inmates have used online pen-pal services to defraud the

-5-

public in the past. Therefore, after due consideration by a committee which made findings on the subject, the MDOC banned the posting of inmate pen-pal solicitations. Plaintiff does not dispute this contention, and defendants have satisfied the first Turner factor.

Under the second factor, defendants point out that plaintiff has a number of alternative ways to communicate with pen pals. Inmates still can write to pen-pals and communicate with people outside the prison. The policy only prohibits participation in pen-pal only web sites by inmates. Basically, plaintiff cannot solicit new pen-pals through the Internet.

Third, in order to accommodate plaintiff's "right" to participate in web sites whose sole purpose is to display prison pen-pals, prison officials would have to substantially increase their monitoring of prison mail in order to combat fraud. As defendants point out, plaintiff acknowledged in his deposition that DOC officials would not be able to look through all of the prison mail in order to find instances where prisoners attempted to defraud the public. (Doc. No. 50, pg. 26). Further, victimization of the public would likely increase if the use of pen-pal web sites was restored.

Finally, the fourth Turner factor may be considered: whether or not there are viable alternatives to the government policy. Plaintiff fails to provide any alternatives, and defendants state that given the millions of letters that pass through the MDOC each year, it would be exceedingly difficult to root out attempted prisoner fraud on the public.

Plaintiff has failed to present evidence that any of the Turner factors weigh in his favor. Rather, defendants have sound justifications for the prohibition on inmates' use of pen-pal web sites. Again, another division of this Court has already found the policy at issue here to be constitutionally sound. Bostic, No. 08-3404-CV-S-RED-P (W.D. Mo. 2010). Nothing has changed since that decision, last year, which would alter this outcome. Defendants are entitled to summary judgment on plaintiff's First Amendment claims.

(Pp. 4-6 of the Court's decision in Lewis v. MDOC, No. 09-4167-CV-C-SOW (W.D. Mo. 2011)).

The Court's analysis in Lewis, excerpted above, and Bostic, No. 08-3404-CV-S-RED-P (W.D.

Mo. 2010), is dispositive of the current case.[3] Plaintiff acknowledges that "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." (Doc. No. 74, pg. 5). Nonetheless, he contends that there are alternatives to this policy which can adequately address defendant's concerns of fraud. Yet, plaintiff fails to address this Court's previous decisions which have already ruled in favor of the constitutionality of the exact same MDOC pen-pal policy he is now challenging.

Notwithstanding the past decisions of this Court, the four Turner factors will be discussed briefly. First, Turner requires that the government provide a legitimate objective, which is rationally connected to the means of satisfying the objective. Here, plaintiff concedes that "preventing fraud is a legitimate governmental objective." (Doc. No. 74, pg. 7). However, plaintiff argues that various other means are available to combat fraud, and that "persons on the outside willingly and knowingly select the prisoner with whom [they] will communicate." (Doc. No. 74, pg. 9).

Plaintiff's arguments miss the mark. That persons outside prison may knowingly and voluntarily initiate contact with prisoners does not prevent prisoners from defrauding them. Further, plaintiff cannot show that preventing prisoners from soliciting pen-pals on website such as writeaprisoner.com does not reduce the amount of fraud that occurs. It is intuitive that the best way to prevent fraud would be to remove the tool used to commit it. Further, the Court is persuaded by defendants' argument that offender rehabilitation requires the prevention of a "cottage industry manipulating online pen pals for their personal, monetary gain." (Doc. No. 72, pg. 25). Allowing

---

[3]Although defendants only discuss this Court's decision in Bostic in their Motion for Summary Judgment, (Doc. No. 72), this Court finds both Bostic and Lewis equally compelling in analyzing plaintiff's First Amendment claims.

-7-

offenders to continue taking advantage of others while in prison would continue the "cycle of criminal behavior," preventing successful rehabilitation. (Doc. No. 72, pg. 26).

The second Turner factor addresses whether prisoners have alternative means to exercise their right. Here, the parties agree that the "right" in question is the right to communicate with the outside world. (Doc. No. 77, pg. 5). Plaintiff contends that "prisoners who have little contact with persons outside of prison do not have a realistic substitute for the banned pen-pal solicitation." (Doc. No. 74, pg. 12). However, isolation from the world-at-large is a fact of prison life. As such, it is inherent that a prisoner's communications with the outside world will be somewhat stifled. See Turner, 482 U.S. 78 at 95 (citing Pell v. Procunier, 417 U.S. 817, 822 (1974) (noting that a prisoner only "retains those [constitutional] rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system"). Yet, plaintiff is still allowed under the MDOC pen-pal policy to communicate with persons outside the prison, including pen-pals. He merely may not pay a website to solicit outside individuals for him. Ultimately, his right to communicate with the outside world is still intact, and plaintiff does not show that the policy bars this right.

The third Turner factor is the impact of accommodating the prisoner's asserted "right". Plaintiff contends that the burden on prison officials of accommodating his right "appear[s] to be negligible." (Doc. No. 74, pg. 14). However, defendants have shown that complaints of fraud by the public would increase were the MDOC to revert back to its pre-2007 policy, requiring additional investigations. They also have shown that the mailroom would have to inspect and sort additional mail. Finally, the DOC would have to even more closely monitor pen-pal solicitation websites for criminal activity. *In toto*, these facts show a fairly substantial burden on prison officials and

Case 2:09-cv-04217-SOW   Document 80   Filed 01/04/12   Page 8 of 11

resources as an impact of accommodating plaintiff's "right".

The fourth Turner factor is the availability of other alternatives for the MDOC to pursue its objective. Plaintiff offers three alternatives to the MDOC pen-pal policy: "1) penalize [] fraudulent behavior; 2) review all mail to [e]nsure that no acts of fraud are being committed, and 3) if a prisoner is caught committing acts of fraud, initiate disciplinary proceedings, to include banning only the individual caught committing the act from further access to the pen-pal site." (Doc. No. 74, pg. 15). However, these alternatives are largely after-the-fact, and do not prevent fraud from occurring in the first place. Plaintiff does not contend, or otherwise show, that prisoners will be sufficiently deterred from committing fraud simply because of the possibility of punishment. Further, the reason the policy was implemented was to combat fraud, which had not been sufficiently deterred by punishment.

Plaintiff also contends that 1) warnings are placed on outgoing mail, which clearly state that a prisoner is sending the mail; and 2) the MDOC website, www.doc.gov, provides [outsiders with] access to all information concerning an inmate in [the] DOC." (Doc. No. 74, pp. 14-15). Both of these safeguards were presumably in place before the implementation of the policy, yet the MDOC still experienced a problem with prisoners committing fraud upon the public. Neither of them tell an intended recipient that a prisoner may be committing fraud. The envelope warnings simply inform the recipient that they are communicating with a prisoner, and the MDOC "inmate locator" provides biographical information and gives the offense committed by the prisoner.

In sum, the Turner factors weigh in favor of the MDOC policy. The policy has a rational connection to the legitimate penological objectives of reducing fraud and facilitating rehabilitation of offenders. Plaintiff has failed to show that the policy unduly restricts his right to communicate

-9-

Case 2:09-cv-04217-SOW   Document 80   Filed 01/04/12   Page 9 of 11

with the outside world. He has failed to show that there are reasonable alternatives to the policy, or that the burden on prison officials of removing the policy would be minimal. Consequently, summary judgment will be granted for defendants.

## **SUMMARY**

There is no genuine issue as to any material fact concerning plaintiff's claims against defendants. Viewing the evidence in the light most favorable to plaintiff, and giving him the benefit of all inferences that may be reasonably drawn from the evidence, it appears that he would be unable to prove any set of facts supporting his claims that the MDOC policy is unconstitutional. Consequently, defendants' motion for summary judgment (Doc. No. 72) will be granted, and this case will be dismissed.

Plaintiff is cautioned that, in addition to the filing fee, federal law now "'makes prisoners responsible for [appellate filing fees of $455.00] the moment the prisoner ... files an appeal.'" Henderson v. Norris, 129 F.3d 481, 483 (8th Cir. 1997)(citation omitted). Pursuant to Henderson, plaintiff is notified as follows:

> (a) the filing of a notice of appeal by the prisoner makes the prisoner liable for payment of the full ... appellate filing fees regardless of the outcome of the appeal; (b) by filing a notice of appeal the prisoner consents to the deduction of the initial partial filing fee and the remaining installments from the prisoner's prison account by prison officials; (c) the prisoner must submit to the clerk of the district court a certified copy of the prisoner's prison account for the last six months within 30 days of filing the notice of appeal; and (d) failure to file the prison account information will result in the assessment of an initial appellate partial fee of $35 or such other amount that is reasonable, based on whatever information the court has about the prisoner's finances.

Id. at 484.

Accordingly, it is **ORDERED** that:

-10-

(1) defendants' motion for summary judgment (Doc. No. 72) is granted; and

(2) this case is dismissed, with prejudice.

                          /s/ Scott O. Wright
                          SCOTT O. WRIGHT
                          UNITED STATES DISTRICT JUDGE

Kansas City, Missouri,

Dated:  January 4, 2012.